Filed 5/23/24  Lopez v. Dayton CA1/1
**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION ONE

| | |
|---|---|
| RICARDO LOPEZ,<br><br>    Plaintiff and Appellant,<br><br>v.<br><br>MICHAEL DAYTON, et al.,<br><br>    Defendants and Respondents. | A168458<br><br>(Contra Costa County<br>Super. Ct. No. C21-00204) |

Plaintiff Ricardo Lopez appeals an order granting summary judgment to defendants Michael Dayton and American Medical Response West (AMR) on the grounds that the suit is barred by the one-year statute of limitations of the Code of Civil Procedure section 340.5 as a matter of law.[1]  We affirm.

## I.

## INTRODUCTION

Lopez alleges he was injured on April 23, 2019, when his vehicle was struck by an ambulance operated by Dayton, a certified EMT and employee of AMR.  Lopez filed his complaint on January 28, 2021, alleging motor vehicle negligence.  He appeals from summary judgment in favor of defendants based

---

[1]    All statutory references are to the Code of Civil Procedure unless otherwise stated.

on the special limitations period applicable to actions for professional negligence by health care providers under the Medical Injury Compensation Reform Act (MICRA). (§ 340.5.)

This appeal turns on whether MICRA's limitations period applies when a third party in a separate vehicle is injured in a collision with an ambulance transporting a patient to a hospital. The trial court determined it did, reasoning that Lopez's claim arose from Dayton's acts performed while providing professional medical services. We agree.

## II.

## FACTUAL AND PROCEDURAL BACKGROUND

The basic facts are undisputed. In April 2019, Dayton and a fellow EMT responded to a 911 call and loaded a patient into an ambulance to transport her to a hospital. Dayton drove the ambulance and, in doing so, was acting in the course and scope of his employment with AMR. Dayton did not use the ambulance's siren or emergency lights. As Dayton made a right-hand turn, there was a collision with Lopez, who was making a left hand turn from the other direction.

Almost two years later, Lopez filed an action against both AMR and Dayton, asserting a single cause of action for "motor vehicle" negligence. Lopez alleged the defendants' acts were negligent and the proximate cause of his injuries.

Defendants filed a motion for summary judgment on the grounds that the alleged negligence constituted "professional negligence" within the meaning of MICRA, and thus MICRA's one-year statute of limitations barred the suit. Defendants also claimed immunity from liability pursuant to the EMS Act, California Health & Safety Code section 1792, *et seq*.

2

The trial court agreed that MICRA's one year statute of limitations applied and granted the motion. The court concluded that because Dayton was transporting a patient at the time of the accident, he was rendering professional services. Dayton's alleged negligent provision of those services caused Lopez's injury, and thus the court held MICRA applied to Lopez's claim. It did not reach defendants' immunity argument. Lopez appealed.

## III.

## DISCUSSION

### A.    *Legal Standards*

The grant of summary judgment is reviewed de novo, viewing the evidence in the light most favorable to the losing party. (*Lopez v. American Medical Response West* (2023) 89 Cal.App.5th 336, 342 (*Lopez*).) "When the decisive facts are undisputed, we are confronted with a question of law and are not bound by the findings of the trial court." (*Ghirardo v. Antonioli* (1994) 8 Cal.4th 791, 799.) Likewise, we independently review issues of statutory construction. (*Canister v. Emergency Ambulance Service, Inc.* (2008) 160 Cal.App.4th 388, 394 (*Canister*).) Where clear and unambiguous, the plain meaning of statutory language governs. (*Id.* at pp. 399–400.)

### B.    *MICRA's Statute of Limitations Bars Lopez's Claim*

Personal injury claims for negligence usually have a two-year statute of limitations. (§ 335.1.) But MICRA imposes a one-year limitations period for claims against healthcare providers based on "professional negligence." (§ 340.5.) Finding MICRA applicable, the trial court granted summary judgment.

Lopez contends the court erred because MICRA does not apply to claims involving " 'generally applicable nonprofessional obligations.' " In his view, defendants breached their general duty of care to him as a member of the public. He asserts that he could not have sued under a theory of

3

professional negligence because he was neither defendants' patient nor an occupant in the ambulance and because his claim does not depend on proof of defendants' violation of any professional obligation. As we shall discuss, however, such facts are extraneous to determining whether MICRA's limitation period applies to a personal injury claim.

MICRA defines "professional negligence" as "a negligent act or omission to act by a health care provider in the rendering of professional services, which act or omission is the proximate cause of injury or wrongful death, provided that such services are within the scope of services for which the provider is licensed . . . ." (§ 340.5, subd. (2).) Lopez does not contest that EMTs are healthcare providers, that the collision was the proximate cause of Lopez's injuries, or that that Dayton was a licensed EMT acting in the course and scope of his employment at the time of the accident.

We are therefore left to decide whether a negligent act by a health care provider in transporting a patient to the hospital via ambulance and causing a third party's injury is "professional negligence" under section 340.5. We conclude it is.

1. **Personal Injury Claims Arising From Provision Of Medical Care To Patients Constitute "Professional Negligence"**

Section 340.5 reflects the codification of a judicially created limitations period for medical malpractice claims in which discovery of the injury was delayed. (*Flores v. Presbyterian Intercommunity Hospital* (2016) 63 Cal.4th 75, 80–81 (*Flores*).) MICRA later amended section 340.5 to its present version. (Stats.1975, (1975-1976 2d Ex. Sess.) ch.1, § 25 (pp. 3969–3970), ch.2 § 1.192 (pp. 3991–3992); *Flores*, *supra,* 63 Cal.4th at p. 81.) Specifically, MICRA "expanded the coverage of the provision to include . . . actions against ' "[h]ealth care provider[s]" ' " and it "amended the description of covered claims, stating that the special limitations period

4

applies to 'an action for injury or death against a health care provider based upon such person's alleged professional negligence.' " (*Flores*, *supra*, 63 Cal.4th at p. 81.)

In *Flores*, the Supreme Court addressed the meaning of "rendering of professional services" under MICRA's definition of professional negligence. (*Id.* at p. 84.) There, a doctor ordered that the rails on a hospital patient's bed to be raised, but the bedrail's latch broke causing the patient to fall and injure herself. (*Id.* at p. 79.) The patient sued for negligence, and the question before the court was whether the hospital's duty to the patient was that of a medical provider or merely a duty owed to the general public. (*Id.* at pp. 79–80.) The court explained that "an injury resulting from a hospital's breach of a generally applicable obligation to maintain its equipment and premises in a safe condition does not fall within section 340.5." (*Id.* at p. 88.) Nonetheless, it found MICRA applied. (*Id.* at p. 89.) It concluded the patient's injury resulted from negligence in the provision of professional services because it flowed from "the doctor's order, which was based on a medical assessment of her condition, that the rails on her bed be raised." (*Id.* at p. 89.)

In reaching this understanding of "professional services," *Flores* relied on precedent concerning a similarly worded statute regarding " 'action[s] against an attorney for a wrongful act . . . arising in the performance of professional services.' " (*Lee v. Hanley* (2015) 61 Cal.4th 1225, 1229 (*Lee*).) Unlike section 340.5, the statute at issue in *Lee* did not turn on, or define, "professional negligence"; but *Lee* confronted a situation where professional obligations "overlap[ped] with obligations that all persons subject to California's laws have." (*Id.* at p. 1238; see *Flores*, *supra*, 63 Cal.4th at pp. 87–88.) Construing a "professional obligation" as one that an "attorney

5

has by virtue of being an attorney," *Lee* held the relevant provision's "time bar applies to claims whose merits necessarily depend on proof that an attorney violated a professional obligation in the course of providing professional services." (*Lee*, at pp. 1236–1237.)

Following similar logic, *Flores* held section 340.5 "applies only to actions alleging injury suffered as a result of negligence in rendering the professional services that hospitals and others provide by virtue of being health care professionals." (*Flores*, *supra*, 63 Cal.4th at p. 88.) Thus, the Supreme Court circumscribed "professional obligations" and "professional services" to those obligations owed and services provided "by virtue of being" attorneys and health care providers, respectively. *Flores* succinctly defined the latter as "the provision of medical care to patients." (*Ibid.*)

## 2. Section 340.5 Extends to Claims By Non-Patients

*Flores* did not consider whether MICRA applies where the plaintiff was injured as a result of professional services but was not the recipient of those services. (See *Gutierrez v. Tostado* (2023) 97 Cal.App.5th 786, 792–793, review granted Mar.20, 2024, No. S238128 (*Gutierrez*).)

But eight years earlier, the Second District, Division Eight, applied MICRA's provisions where a nonpatient claimed the defendants negligently failed to advise him to wear a seatbelt in an ambulance transporting a patient. (*Canister*, *supra,* 160 Cal.App.4th at p. 392.)[2] *Canister* determined "as a matter of law" that "transporting patients and driving or operating an ambulance" are professional services of a licensed EMT under MICRA because they are "[a]n integral part of the duties of an EMT." (*Id.* at p. 407.)

---

[2] The pertinent MICRA provision was an exception to the collateral source rule in medical negligence cases. (*Canister*, *supra*, 160 Cal.App.4th at p. 408.) MICRA's limitations period was not at issue in *Canister*.

6

In that case, no professional services were provided *to the plaintiff*, but the court held that MICRA extends " 'to any foreseeable injured party . . . provided the injuries alleged arose out of professional negligence.' " (*Ibid.*) It further held "it [was] foreseeable as a matter of law that a [passenger] accompanying [a patient] in an ambulance might be injured in the operation of the ambulance." (*Id.* at pp. 407–408.)

Last year, Division Five of this district extended that logic to the applicability of MICRA's limitations period. (*Lopez, supra,* 89 Cal.App.5th at p. 347 [applying section 340.5 to ambulance patient's and accompanying passenger's negligence claims "because their alleged injuries occurred while the EMT's were rendering professional services by transporting plaintiffs in an ambulance"] (*Lopez*).) Relying on both *Flores* and *Canister*, *Lopez* found an EMT's transportation of a patient constituted the "provision of medical care" because the alleged negligence in the use of equipment—the ambulance—was " 'integrally related to her medical diagnosis and treatment.' " (*Id.* at p. 347, quoting *Flores, supra*, 63 Cal.4th at p. 89.) Unlike *Canister*, however, *Lopez* did not emphasize the foreseeability of the injury in extending section 340.5's applicability to a third party's claim. Instead, *Lopez* determined that, "under the principles discussed in *Flores*, MICRA's statute of limitations applie[d] to plaintiffs' claims because their alleged injuries occurred while the EMT's were rendering professional services by transporting plaintiffs in an ambulance." (*Id.* at p. 347.)

Even more recently, the Sixth District applied MICRA's statute of limitations to a personal injury action brought against an EMT by another motorist. (*Gutierrez, supra*, 97 Cal.App.5th at p. 789.) Finding *Canister* and *Lopez* on point, the court held that "transporting a patient in an ambulance qualifies as the provision of medical care, and that the act of driving the

7

ambulance is an integral part of that care." (*Gutierrez*, at p. 793.)  It therefore "conclude[d] that MICRA is not limited to suits by patients or to recipients of medical services as long as the plaintiff is injured due to negligence in the rendering of professional services and his injuries were foreseeable."  (*Id.* at p. 794.)

In sum, courts broadly construe "professional negligence" to claims brought by nonpatients.  The limiting principle—that the proximate cause of the plaintiff's injury be the provision of medical care—is unambiguous. (§ 340.5, subd. (2).)  Further, numerous cases have found that transporting a patient via ambulance is medical care.  (E.g., *Canister*, *supra*, 160 Cal.App.4th at p. 407; see also *T.L. v. City Ambulance of Eureka, Inc.* (2022) 83 Cal.App.5th 864, 879.)

### 3. The Provision of Medical Care Proximately Caused Lopez's Injury

As discussed above, the weight of authority recognizes transporting a patient via ambulance as medical care.

Lopez suggests *Flores'* analytical approach and post-*Flores* case law calls that conclusion into question.  This argument was rejected in *Lopez*, *supra*, 89 Cal.App.5th at p. 346 and *Gutierrez*, *supra*, 97 Cal.App.5th at p. 795, and it fails here for the same reason.  In short, no authority undercuts the conclusion that transporting a patient to a hospital in an ambulance is medical care because it is integrally related to medical treatment.  (Cf. *Aldana v. Stillwagon* (2016) 2 Cal.App.5th 1, 8 [distinguishing instance where a paramedic supervisor was *not* transporting patient in an ambulance, but driving to the scene of an emergency in a truck]; *Johnson v. Open Door Community Health Centers* (2017) 15 Cal.App.5th 153, 162 [*Canister*'s "outcome is arguably correct" under *Flores* because "the EMTs who allegedly

8

operated an ambulance without due care were rendering professional services at the time"].)[3]

Lopez depicts a parade of horribles unleashed by this result. Such concerns are unfounded. Under *Flores*' framework, misconduct by medical providers will not be transformed into professional negligence merely because it occurs contemporaneously with the provision of medical care. Professional negligence remains limited to "only that negligent conduct engaged in *for the purpose of* (or the purported purpose of) delivering health care to a patient." (*So v. Shin* (2013) 212 Cal.App.4th 652, 666–667 [finding section 340.5 does not apply where doctor "acted for her own benefit . . . *not* for the benefit of her patient"].) Here, Lopez does not question Dayton's purported intent to transport the patient to the hospital. (See *id.* at p. 667 [noting *Canister* did not question the "legitimate medical reason" for the negligent act].)

Lopez also seeks to escape application of MICRA's limitations period on foreseeability grounds. He argues "it was not foreseeable that Dayton's negligence in providing medical care to his patient would cause injury to Lopez because Dayton's provision of services to his patient did not cause the collision with Lopez." But this reflects a misunderstanding of Dayton's professional services—transportation. It is "entirely foreseeable" that the "provision of ambulance services" may cause collisions "where third parties are injured." (*Gutierrez, supra,* 97 Cal.App.5th at p. 794.)

In his reply briefing, Lopez notes the *Gutierrez* dissent lodged a related criticism, asserting that the result was "unpredictable and surprising" and departed from the approach espoused in *Lee*. (*Id.* at p. 796 (dis. opn. of

---

[3] We emphasize that *Flores* rejected a narrow rule limiting professional services to tasks requiring " 'a particularized degree of medical skill.' " (*Flores, supra,* 63 Cal.4th at pp. 84–85.)

9

Bromberg, J.).) The dissent insisted section 340.5 should "appl[y] only if a plaintiff asserts a claim requiring proof that a health care provider's professional obligation has been violated" because "the plaintiff will always know if his or her claim is based upon professional negligence and there will no surprise or unfairness." (*Id.* at p. 797.)[4] It found this approach was in accord with the holding in *Lee* on which *Flores* relied. (*Gutierrez*, at p. 797.)

But while *Flores* found *Lee* "instructive," it did not hold that section 340.5 only applies to claims "whose merits necessarily depend on proof" that a health care provider violated a professional obligation while rendering professional services. (Compare *Lee*, at pp. 1236–1237 with *Flores*, *supra*, 63 Cal.4th at p. 88.) As discussed above, *Flores* looked to *Lee* in construing "professional services" as those "provide[d] by virtue of being health care professionals." (*Flores*, at p. 88.) In the context of lawyers, *Lee* determined the delineation between professional and general obligations could only be discerned by the proof required to show the alleged violation of an obligation. (*Lee, supra*, 61 Cal.App.4th at pp. 1236–1237.) But in the health care context, professional services are readily identified as those necessary for the provision of medical care. (*Flores*, at p. 88; *So v. Shin*, *supra*, 212 Cal.App.4th at pp. 666–667.).

---

[4]    We note that perceived "unfairness" in applying the limitations period is not a valid reason to ignore the statute's plain text. (See *Sanford v. Garamendi* (1991) 233 Cal.App.3d 1109, 1125 ["Our preference for literalism is compelled by the constitutional doctrine of separation of powers"].) We note that civil limitations periods " 'are by definition arbitrary, and their operation does not discriminate between the just and the unjust claim.' " (*Roman Catholic Bishop of Oakland v. Superior Court* (2005) 128 Cal.App.4th 1155, 1161.) Again, case law clearly establishes that transporting a patient via ambulance constitutes the "rendering of professional services." Thus, plaintiffs are on notice to not sleep on their rights following traffic accidents with ambulances.

The instant collision occurred while Dayton was rendering professional services to a patient—i.e., transporting the patient in the AMR ambulance. Thus, Dayton's allegedly negligent provision of professional services was the proximate cause of Lopez's injury. Accordingly, under the analytical framework adopted in *Flores*, Lopez's claim flows from professional negligence, invoking MICRA's special one-year statute of limitations.

### 4. Lopez's Other Arguments Fail

Lopez asserts that the special limitation period provided in section 340.5 was "expressly intended for medical malpractice cases." (See also *Gutierrez*, *supra*, 97 Cal.App.5th at p. 798 (dis. opn. of Bromberg, J.) [no "reason to believe that traffic accident claims involving ambulance drivers are covered by medical malpractice insurance"].)

This critique conflates one of MICRA's objectives with section 340.5's reach. MICRA's modification of section 340.5 was "designed to reduce the cost of medical malpractice insurance 'by limiting the amount and timing of recovery in cases of professional negligence.' " (*Flores*, *supra*, 63 Cal.4th at p. 81.) But there is no authority for the proposition that the applicability of MICRA is limited to medical malpractice claims.

Lopez also contends defendants "failed to meet their initial burden to show a lack of triable issues of fact" because there is "no evidence that Lopez ever engaged [defendants] to provide him with any professional services" or "that either Dayton or AMR ever tendered Lopez's claim to their professional liability insurer." For the discussed reasons above, such facts are irrelevant as a matter of law.

Because we find the trial court correctly applied MICRA's one-year statute of limitations applied to Lopez's claim, we need not resolve AMR's and Dayton's claims of limited immunity under the EMS Act.

11

**IV.**

**DISPOSITION**

The order is affirmed.  Dayton is entitled to costs on appeal.  (Cal.
Rules of Court, rule 8.278, subd. (a)(2).)

                                 LANGHORNE WILSON, J.

WE CONCUR:


HUMES, P. J.


BANKE, J.


A168458N